## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.: 08-60623-DIMITROULEAS/SNOW

BANK OF MONGOLIA,

      Plaintiff,

v.

M&P GLOBAL FINANCIAL SERVICES, *et al.*,

      Defendants.

_____/

## DEFENDANT SENOL TASKIN'S MOTION FOR RELIEF FROM FINAL DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

The defendant, Senol Taskin, by and through undersigned counsel, and under Federal Rule of Civil Procedure 60, moves the Court for relief from the Final Default Judgment entered against Senol Taskin,[1] and in support hereof, states as follows:

### INTRODUCTION

The Court entered final judgment against Taskin on November 1, 2010. [D.E. 370.] But the judgment is void for lack of personal jurisdiction and lack of sufficiency of service of process. Put simply, the plaintiff's actions violated Taskin's due process rights.

The allegations in the amended complaint and in the memorandum submitted by the plaintiff fail to establish that, on either a *prima facie* claim or "arguable basis," the Court has personal jurisdiction over Taskin. Given the statements set forth in the Declaration submitted by Taskin, the parties should have participated in an evidentiary hearing on the personal jurisdiction

---

[1] On November 9, 2010, Taskin submitted a Declaration to the Court, which the Court considered as a motion for relief from the default. [D.E. 371; D.E. 381.] But at the time Taskin signed the Declaration, the Court had not yet entered final judgment; therefore, Taskin submits this motion for relief from the final judgment under Rule 60(b).

issue.  In such a hearing, the Court would have determined (a) the plaintiff has failed to satisfy Florida's long-arm statute, (b) Taskin does not have sufficient minimum contacts relating to the specific claims alleged in order to justify exercising personal jurisdiction, and (c) exercising personal jurisdiction over Taskin would offend traditional notions of fair play and substantial justice.

Moreover, even if the plaintiff had satisfied the requirements to establish the Court could exercise personal jurisdiction over Taskin, the plaintiff failed to properly service Taskin with process.  Service of initial process by registered mail to a resident of Canada violates Article 10(a) of the Hague Convention.

Based on the legal standards governing the motion, and facts presented in the matter, the Court should vacate the final default judgment entered against Taskin and dismiss the claims against him for lack of personal jurisdiction and lack of sufficiency of process.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about December 11, 2009, the plaintiff, Bank of Mongolia, filed an amended complaint alleging claims against Taskin.  [D.E. 140.]  The plaintiff served Taskin by registered mail at an address in Canada.  [D.E. 162.]  Taskin did not respond to the amended complaint, and, consequently, the plaintiff sought and obtained a default against Taskin.  [D.E. 164.]  On March 19, 2010, the plaintiff moved for default judgment against Taskin.  [D.E. 186.]  Taskin did not respond to the motion for default judgment.  On April 19, 2010, the Court entered final default judgment against Taskin (D.E. 236), with the Court referring the damages issue to Magistrate Judge Snow.

On October 12, 2010, Magistrate Judge Snow issued a Report and Recommendation with a judgment of over $67 million against Taskin.  [D.E. 364.]  Taskin did not object to the Report

and Recommendation.   On November 1, 2010, the Court approved the Report and Recommendation and entered judgment against Taskin for the amount recommended in Magistrate Judge Snow's Report.  [D.E. 370.]

On November 9, 2010, Taskin submitted to the Court a "Declaration." [D.E. 371.]  In it, Taskin set forth certain claimed statements of fact indicating he lacked any minimum contacts with Florida such that it was improper for the Court to have exercised personal jurisdiction over him.  Taskin also stated the plaintiff had failed to properly serve him with the complaint.  Taskin did not seek relief from the Court under Rule 59(e) or 60(b), nor did he seek relief under any other Rule.   Taskin's Declaration did not include any prayer for relief.   Although Taskin submitted the Declaration to the Court on November 9, 2010, he signed it on October 22, 2010, before the Court entered final judgment on the Report and Recommendation.  [D.E. 371; D.E. 370.]  Taskin's October 22, 2010 Declaration could not have been a motion under Rule 60(b) seeking relief from the Court's November 1, 2010 Order because that Order was not a final judgment from which he could have sought relief at the time he signed the Declaration.

The Court, on November 9, 2010, entered an Order directing the plaintiff to submit a response to Taskin's submission by November 29, 2010.  [D.E. 372.]  The Court also indicated it intended to construe Taskin's Declaration as a Motion to Alter/Amend a Judgment or for Relief from a Judgment.  *See id.*  In the November 9, 2010 Order, the Court did not provide a deadline for Taskin to file a reply in support of his Declaration.  *See id.*

On November 29, 2010, the plaintiff filed its Response to Taskin's Declaration.  [D.E. 380.]  In it, the plaintiff set forth statements in an attempt to contradict the assertions in Taskin's Declaration as it related to the exercise of personal jurisdiction.  The plaintiff also contended Taskin was properly served with a summons in this matter.

3

On January 14, 2011, this Court entered an Order denying Taskin's "Motion" to alter or amend the judgment or for relief from the judgment [D.E. 381.]

ARGUMENT

Rule 60 states a final judgment may be set aside if it is void.  *See* Fed. R. Civ. P. 60(b)(4). While motions filed under Rule 60(b) must ordinarily be filed within a "reasonable time," and subject to scrutiny as to whether there was good cause for any delay in filing, that standard does not apply to a motion filed under Rule 60(b)(4).  *See Hertz Corp. v. Alamo Rent-a-Car, Inc.*, 16 F.3d 1126, 1130-31 (11th Cir. 1994).

Rule 60(b)(4) motions are appropriate in situations where the court's ruling is premised on a jurisdictional error, or on a violation of due process.  *See United States Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1377 (2010).  When there is no dispute as to the facts claimed to give rise to personal jurisdiction, the exercise of personal jurisdiction is a question of law.  *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).  The standard applies whether the defendant originally moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b), or sought relief from the judgment based on Rule 60(b).  *See id.*  But when, as here, the parties have submitted competing facts, a court must conduct an evidentiary hearing for the limited purpose of determining personal jurisdiction.  *See Laux v. Carnival Corp.*, 470 F.Supp.2d 1379, 1383 (S.D. Fla. 2007).

**B.     The Facts the Plaintiff Submitted to Support the Default Judgment Reveal a Fatal Jurisdictional Defect.**

To exercise personal jurisdiction over Taskin – who all parties to this case have admitted is an out-of-state defendant – federal courts undertake a two-part analysis, the first of which is to determine whether there is jurisdiction under the state's long-arm statute.  *See Laux*, 470

F.Supp.2d at 1381.  The plaintiff must establish a *prima facie* claim for personal jurisdiction by putting forth evidence.  *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).  If the plaintiff satisfies the initial burden, the defendant must then, through affidavit, raise a meritorious challenge to personal jurisdiction.  *See id.*  If the defendant does so, the plaintiff must then establish jurisdiction through affidavit, testimony, or documents.  *See id.*  Ultimately, it is the plaintiff's burden to establish personal jurisdiction.  *See Oldfield*, 558 F.3d at 1217.

Here, the plaintiff's amended complaint includes allegations purporting to establish personal jurisdiction over Taskin.  [D.E. 140.]  After the Court entered final judgment, Taskin submitted an affidavit in the form of a Declaration containing statements contesting personal jurisdiction.  [D.E. 371.]  In response, the plaintiff submitted a memorandum containing statements purporting to contradict Taskin's averments.  [D.E. 380.]  On their face, the complaint and submissions conflict, and on that basis, the parties should have then engaged in an evidentiary hearing for the Court to be able to determine personal jurisdiction.  *See Laux*, 470 F.Supp.2d at 1383.  The Court should therefore vacate the final judgment against Taskin pending determination of personal jurisdiction in an evidentiary hearing.

1.      **The Plaintiff Failed to Meet Its Burden under the Long-Arm Statute.**

If the parties presented the Court with evidence at an evidentiary hearing, the Court would have determined there are insufficient facts to establish a *prima facie* claim of personal jurisdiction over Taskin.  Taken at face value, the Declaration Taskin submitted makes clear the Court could not assert personal jurisdiction over Taskin.  But the plaintiff's amended complaint and responsive memorandum also fail to meet the plaintiff's burden to establish personal jurisdiction.

With regard to the amended complaint, there are no allegations stating Taskin himself conducted business in the State of Florida.  There are claims certain corporations of which Taskin is alleged to be an officer engaged in business in Florida, but the ultimate facts alleged against Taskin make no reference to Florida at all.  [D.E. 140 at ¶ 276(c).]

While the plaintiff sets forth numerous claimed facts in its response to Taskin's Declaration, none of the claimed facts establishes an arguable basis for personal jurisdiction.  In order for a nonresident corporate director to be subject to personal jurisdiction on the basis of conducting business in the forum state, he must have acted individually for his own benefit, not just for the benefit of the corporation, and in doing so, caused harm to the plaintiff in the forum state.  *See Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993).[2]

Here, the plaintiff put forth five (5) claimed bases for the Court to exercise personal jurisdiction over Taskin.  The first is Taskin traveled to Florida on several occasions.  [D.E. 380 at 8-9.]  But the plaintiff makes no attempt to claim any of these alleged trips had anything to do with the claims alleged in the complaint.  Points three, four, and five relate to the plaintiff's claim Taskin was an officer of both M&P Global and GT International Holdings, and that Taskin "spent an enormous amount of time working" for these two companies.  But the plaintiff puts forth no evidence showing Taskin performed any of the purported work for his own benefit, separate and apart from the corporation's benefit, or, even if it made such a showing, that Taskin performed any of this "enormous amount of time working" in Florida.

---

[2]     The Eleventh Circuit has previously held the reach of Florida's long-arm statute is a question of Florida law, and, accordingly, the court is required to construe the long-arm statute in the same manner as Florida's Supreme Court.  *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1981).

The plaintiff also alleged Taskin sent a substantial number of emails on behalf of M&P. But Florida law is clear, electronic communications into Florida will give rise to personal jurisdiction only when the claim alleged arose from the communications themselves.  *See Internet Solutions*, 557 F.3d at 1296.  There are no facts alleged indicating Taskin's emails into Florida gave rise to the claims alleged against him.  To the contrary, any emails Taskin may have sent to the plaintiff would have been to Mongolia or New York, not Florida.  And even then, the emails would have had to form the basis of the claims alleged.  As alleged, none of Taskin's emails can form the basis for the Court to exert personal jurisdiction over Taskin.

Finally, the plaintiff claims Taskin had a bank account in Florida in his name during the relevant period, and the account served as the instrument through which to receive funds related to M&P Global.  [D.E. 380 at 9.]  The plaintiff also claims Ms. Suzanne Greenberg testified the account was necessary at one point in order to engage in certain transactions by M&P, and she closed the account after inquiries from the Canadian Board of Revenue.  *See id.*  But in the portion of the transcript upon which the plaintiff relies, Ms. Greenberg denied opening a trading account of the type Taskin mentioned in his email.  [D.E. 380, Ex. F, at 166:20-167:6.]  The only account in Ms. Greenberg's testimony that related to Mr. Taskin was an account she "managed," but she did not state the account was in Florida.  [D.E. 380, Ex. F, at 166-169:13.]

The amended complaint references an account at Saxo Bank.  [D.E. 140 at ¶¶ 199-200.] Saxo Bank is an online bank headquartered in Denmark; it is not licensed to conduct business in Florida, and, consequently, has no accounts in Florida for Taskin.

In sum, the amended complaint and response fall short of establishing the facts necessary to satisfy Florida's long-arm statute.  Therefore, the Court should vacate the judgment against Taskin for want of personal jurisdiction.  Alternatively, the Court should vacate the judgment

pending an evidentiary hearing to resolve the conflicts present between the plaintiff's complaint and memorandum, and Taskin's Declaration.

**2.  The Plaintiff Did Not Meet Its Burden to Establish Taskin Had Sufficient Minimum Contacts with Florida to Be Subject to Personal Jurisdiction.**

Even if the Court found the plaintiff satisfied Florida's long-arm statute, the Court would still have no personal jurisdiction over Taskin, since the plaintiff failed to establish Taskin had sufficient minimum contacts with Florida such that the exercise of jurisdiction will satisfy the Fourteenth Amendment and not offend "traditional notions of fair play and substantial justice." *See U.S. SEC v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).  While the plaintiff alleged in the amended complaint Taskin is subject to both general and specific jurisdiction in Florida, the plaintiff, in its memorandum, only argued Taskin is subject to specific jurisdiction.[3]  [D.E. 380 at 8.]

To be subject to specific jurisdiction, the plaintiff must establish there was some act by which Taskin purposefully availed himself of the privileges of conducting activities within Florida, thereby invoking the benefits and protections available under Florida law.  *See Hanson v. Denckla*, 78 S.Ct 1228 (1958).  The plaintiff must also establish Taskin's contacts with Florida related to the plaintiff's claim, or give rise to it.  *See Carillo*, 115 F.3d at 1542.  These two requirements ensure a defendant is subject to litigation in a specific forum only when his conduct and connection with the forum are such that he could have reasonably anticipated being sued in

---

[3]     Taskin does not incorporate the argument regarding the plaintiff's failure to establish general jurisdiction over Taskin because the contacts alleged in the amended complaint and argue in the response are not continuous and systematic such that Taskin would be subject to general jurisdiction in Florida.  In the event the Court elects to consider general jurisdiction despite the plaintiff's decision to omit the argument from its response, Taskin respectfully requests the Court afford him the opportunity to supplement its motion with points and authority on the general jurisdiction issue.

that forum.  *See Oldfield*, 558 F.3d at 1220-21 (*citing World-Wide Volkswagen Corp. v. Woodson*, 100 S.Ct.559, 567 (1980)).

To establish specific jurisdiction, the Eleventh Circuit has held the plaintiff must go further than establishing the contact with Florida was a "but-for" cause of the claim alleged.  *See id.* at 1223-24.  There must be a substantial relationship that hews closely to the foreseeability and fundamental fairness on which the specific jurisdiction doctrine rests.  *See id.* at 1224.  Here, the plaintiff has failed to establish the facts alleged against Taskin relate to its claim against him.  Neither the amended complaint nor the response states specific facts establishing a nexus between Taskin's alleged conduct and Florida.  *See, generally, id.* at 1223.

Specifically, the plaintiff has not stated Taskin visiting Florida gave rise to the claims alleged against him.  The conclusory allegations Taskin's activities as a director/officer of M&P Global and GT International Holdings establish the requisite minimum contacts are not sufficient to meet the minimum contacts necessary for the Court to exert personal jurisdiction over Taskin.  The alleged activities relate to the Court's jurisdiction over the companies, not over Taskin.

There are also no allegations Taskin conducted the companies' business in Florida, or Taskin performed any acts in Florida.  Taskin acted as an officer or director of the companies from Canada.  In fact, there are no allegations Taskin, as an individual, performed any act in Florida at all out of which he could have reasonably anticipated being haled into court here.  And there are no allegations establishing the Taskin used the Florida bank account in the transactions giving rise to the claim.

Therefore, the plaintiff has failed to present the minimum contacts necessary to establish specific jurisdiction over Taskin.  Thus, the Court should vacate the final judgment against Taskin.  Alternatively, because there is a conflict between the statements contained in Taskin's

Declaration and the response, the Court should vacate the final judgment pending an evidentiary hearing to determine personal jurisdiction over Taskin.

Even if the plaintiff could establish minimum contacts existed, those contacts must also be evaluated with other factors to ensure exercise jurisdiction comports with "traditional notions of fair play and substantial justice." *See Carillo*, 115 F.3d at 1542. The factors include: (i) the defendant's burden in litigating in the chosen forum; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several States in furthering fundamental substantive social policies. *See World-Wide Volkswagen Corp.*, 100 S.Ct at 564.

With regard to the first factor, Taskin, as an international defendant, would be uniquely burdened having to defend himself in a foreign court. *See Asahi Metal Indus. Co., Ltd. v. Superior Court*, 107 S.Ct. 1026, 1033 (1987). Therefore, the burden is high for a plaintiff to force a citizen of either Canada or Turkey to defend himself in a Florida court. *Accord Vision Media TV Group, LLC v. Forte*, 724 F.Supp.2d 1260, 1267 (S.D. Fla. 2010) ("high" burden for a North Carolina company to defend itself in a Florida court). As for the second factor, the case here concerns a dispute between a Mongolian bank with no locations in Florida and a citizen of either Canada or Turkey. As such, Florida has no interest seeking redress on behalf of a Mongolian bank. *Contra Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010). Therefore, the first and second factors favor Taskin.

Although the plaintiff may be served when combining all of its claims against all of the defendants in one forum, Florida should not be that forum because the defendants include a

foreign national, Taskin.  Therefore, the third factor does not favor the plaintiff.  *Contra Mutual Service Ins. Co. v. Frit Industries*, 358 F.3d 1312, 1320 (11th Cir. 2004) (plaintiff could obtain efficient relief in Alabama, as it was the only forum that could join all defendants in the same lawsuit).  Ultimately, while it would arguably be more convenient for the plaintiff to obtain relief against the defendant in Florida, the convenience is outweighed by the burden on the defendant having to come here to defend himself in Florida.  *See Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F.Supp.2d 1130, 1143 (S.D. Fla. 2009).

Therefore, asserting jurisdiction over Taskin offends traditional notions of fair play and substantial justice.  Accordingly, the Court should vacate its judgment against Taskin for want of personal jurisdiction.

### C.    The Judgment Is Void for Insufficiency of Service of Process.

In addition to the jurisdictional defect, the Court should vacate the judgment as void, because the plaintiff failed to properly serve Taskin with process.  There is little dispute between the parties the plaintiff could send Taskin documents through registered mail under Article 10 of the Hague Convention, provided the receiving country does not object to service by postal channels.  *See Tracefone Wireless, Inc. v. Bequator Corp.*, 717 F.Supp.2d 1307, 1309-10 (S.D. Fla. 2010).  The parties further acknowledge there is broad disagreement among federal courts as to whether Article 10 includes the initial service of process in a case.  *See, generally, Lobo v. Celebrity Cruises, Inc.*, 2009 WL 3642817, at *2 (S.D. Fla. 2009).  But the plaintiff fails to acknowledge the most recent pronouncement on the issue from a federal court in Florida, which held Article 10 of the Hague Convention does not permit service of the original summons and complaint in Canada by mail.  *See In re MAK Petroleum, Inc.*, 424 B.R. 912, 918-19 (Bankr. M.D. Fla. 2010).

In *MAK Petroleum*, the defendant, a church located in Ontario, Canada, was served by Federal Express mail, return receipt requested. *See id.* at 917-18. The court noted compliance with the Hague Convention is mandatory in all cases to which it applies. *See id.* at 916 (*citing Volkswagenwerk Aktiengesellschaft v. Schlunk*, 108 S.Ct. 2104, 2111 (1988)). The court further stated that, while service of initial process in Canada is usually accomplished through a Central Authority, Article 10 to the Hague Convention provides exceptions to the general requirements. *See id.* at 918. Specifically, Article 10(a) states the provisions of the Convention will not interfere with the ability to **send** judicial documents by postal channels to persons abroad. *See id.* The court differentiated Article 10(a)'s "sending" of documents with Article 10(b) and (c)'s references to "serving" process, noting the United States Supreme Court has previously held "service of process" has a "well-established technical meaning." *See id.* (*quoting Volkswagenwerk*, 108 S.Ct. at 2109).

The *MAK Petroleum* court concluded the word "send" in Article 10(a) should refer only to documents sent after initial process was served. *See id.* While the Canadian government had subsequently issued declarations indicating it did not object to service by postal channels, the court noted those declarations related only to Article 10(a), and not to Articles 10(b) or (c), which the court interpreted to mean the declarations related only to "service" of documents after initial process had been completed. *See id.* at 919. Accordingly, the court held service on the defendant by Federal Express mail violated Article 10 of the Hague Convention, and quashed service on the defendant. *See id.* at 920-21.

Here, it is undisputed the plaintiff served Taskin by registered mail. [D.E. 162.] Under the terms of Article 10(a) of the Hague Convention and *MAK Petroleum*, the Court should find

the judgment is void for insufficiency of service of process.  Thus, the Court should vacate the judgment.[4]

CONCLUSION

Based on the foregoing points and authorities, the defendant, Senol Taskin, respectfully requests this Court enter an Order: (i) vacating the Court's November 1, 2010 Order of final judgment against Senol Taskin; (ii) dismissing, for lack of personal jurisdiction and/or insufficiency of process, the amended complaint asserted against Senol Taskin; and (iii) entering such other and further relief this Court deems proper.

Respectfully submitted,

Polenberg Cooper, P.A.
1351 Sawgrass Corporate Parkway
Suite 101
Fort Lauderdale, FL 33323
(954) 742-9995 (T)
(954) 742-9971 (F)


By:  _/s Jon Polenberg_____
        Jon Polenberg (FBN 653306)
        Jude C. Cooper (FBN 366160)

---

[4]      The plaintiff attempts to claim some courts look beyond the Hague Convention to determine whether service was proper.  This flies in the face of the statement, as previously discussed herein, in both *MAK Petroleum* and *Volkswagenwerk* that when the Hague Convention applies (which is undisputed here), compliance is mandatory.  Therefore, once it is determined service did not comply with the Hague Convention, no other inquiry is necessary or permitted. Accordingly, the Court should reject any legal theory for alternative service outside of the Hague Convention.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this 2d day of September, 2011 on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s Jon Polenberg*       

Jon Polenberg

David B. Mankuta, Esq.
Atkinson, Diner, Stone, Mankuta & Ploucha, P.A.
100 SE 3rd Avenue, Suite 1400
Fort Lauderdale, FL 33394

Jose M. Sanchez, Esq.
Atkinson, Diner, Stone, Mankuta & Ploucha, P.A.
100 SE 3rd Avenue, Suite 1400
Fort Lauderdale, FL 33394

Ronald K. Lantz, Esq.
First Professional Building
636 U.S. Highway 1, Third Floor
North Palm Beach, FL 33408

14