IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **BANK OF MONGOLIA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO. 08-CV-60623** |
| v. ) | **Dimitrouleas-Snow** |
| ) | |
| **M&P GLOBAL FINANCIAL SERVICES, INC.,**) | |
| **M&P GLOBAL FINANCIAL SERVICES** ) | |
| **EUROPE, AG, BURTON D. GREENBERG,** ) | |
| **JOEL E. GREENBERG, GT** ) | |
| **INTERNATIONAL, INC., JAMES R.** ) | |
| **HALPERIN AND SENOL TASKIN,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT SENOL TASKIN'S 2nd MOTION FOR RELIEF FROM FINAL JUDGMENT**

Plaintiff, Bank of Mongolia ("BOM"), by and through its undersigned counsel, files this Response to Defendant Senol Taskin's Motion For Relief From Final Default Judgment And Incorporated Memorandum Of Law, dated September 2, 2011 (the "Motion").

The Defendant seeks relief from a final judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. But the Court has already decided the Motion before it. On January 14, 2011, this Court denied Defendant Taskin relief from a final judgment on the exact same facts and grounds being urged here again. (Docket No. 381.) Taskin did not appeal the Court's order, but instead chose to wait more than 7 months to file a motion using the same grounds and facts. Courts have held that defendants cannot use Rule 60(b) as a "substitute for a timely appeal", as Defendant Taskin is attempting to do here. His motion is thus unreasonable and should be denied on this basis.

In any event, the Court's judgment against Defendant Taskin is proper and should be upheld. In order to obtain relief from a judgment, Taskin must show extraordinary circumstances. As set out below, the material submitted by the BOM in its first Response, dated November 29, 2010, to the Defendant's earlier motion for relief from judgment shows that this Court's exercise of jurisdiction was proper. It is without dispute that (1) Defendant Taskin had a bank account in Florida that was used to hold the illicit proceeds of the RICO enterprise; (2) he

was an officer of Florida corporations (and held himself out as such) that were part of the enterprise, often directing the actions of the Florida entities; (3) he traveled to Florida on numerous occasions; (4) he sent hundreds of emails to his co-enterprise members in Florida to coordinate the enterprise's activities, including activities related to the BOM; and (5) he directed that more than a million dollars be paid to him out of the Florida accounts.  This is substantial evidence from contemporaneous documents showing that personal jurisdiction over Defendant Taskin was proper.

Finally, Defendant Taskin's own Declaration shows that he had actual knowledge about the proceedings against him, went to see a lawyer upon receiving the complaint in January 2010, and yet continuously employed delay tactics without sufficient justification.  Even after this Court decided the first Rule 60(b) motion against him, he waited more than 7 months to file the instant Motion. Thus, no extraordinary circumstances exist to rescind the Court's entry of final judgment.

## I.     Factual and Procedural Background

The following is a summary of the history of this case with respect to this Defendant:

- On December 11, 2009, BOM filed its amended complaint, which included claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against Defendant Taskin and his associates.[1]  (Docket Entry No. 140.)

- On December 17, 2009, Defendant Burton Greenberg testified at a hearing in this Court that Senol Taskin was an officer of M&P Global and that Taskin operated out of his home in Canada.  (Docket Entry No. 168, Transcript, dated December 17, 2009, at 26:24 to 27:13, relevant excerpts of which were attached as Exhibit A to the BOM's Response To Defendant Senol Taskin's Motion To Alter/Amend Of For Relief From A Judgment, dated November 29, 2010 (the "First Response").)

- On January 7, 2010, a copy of the Summons and Amended Complaint were delivered via U.S. Registered Mail to Senol Taskin's last known address in Canada.  (Affidavit of Service, February 19, 2010, Docket Entry No. 162.)

- On January 25, 2010, Taskin sought assistance from Canadian counsel and executed an Affidavit relating to the service of the Summons and Complaint. (Declaration, Docket Entry No. 371, Exs. A-C.)  Taskin did not provide that

---

[1]     BOM alleged that Defendant Taskin was the alter ego of three corporate defendants—M&P Global Financial Services, Inc., M&P Global Financial Service Europe, AG, and GT International, Inc.—all of which filed answers to the amended complaint.

Affidavit to this Court.  (*See id*.)

- On February 23, 2010, the Clerk entered a default against Defendant Taskin. (Docket Entry No. 164.)

- On March 19, 2010, BOM filed a Motion for Default Judgment. (Docket Entry No. 186.)

- On April 6, 2010, this Court issued an Order to Show Cause why the Motion for Default Judgment should not be granted. (Docket Entry No. 217.) Defendant Taskin never responded.

- On April 19, 2010, "Final Judgment" was entered against Defendant Taskin for treble damages on the two RICO claims and for unspecified damages for the remaining claims. (Docket Entry No. 236.)

- On May 3, 2010, BOM filed an affidavit of damages on its claims against Defendant Taskin. (Docket Entry No. 258.) Defendant Taskin never filed any opposition to the affidavit of damages.

- On October 12, 2010, ten months after the Amended Complaint was filed, Magistrate Judge Snow recommended that the Court enter final judgment against Defendant Taskin in the amount of $67,639,921.62 for the RICO and Civil Theft Counts in the Amended Complaint. (Docket Entry 364.) Defendant Taskin never objected to the Magistrate Judge's Report and Recommendation.

- On November 1, 2010, the Court issued a judgment against Defendant Taskin as to damages. (Docket Entry 370.)

- On November 9, 2010, Defendant Taskin submitted a purported Declaration seeking to disturb the April 19, 2010 final judgment based on the Complaint, of which Taskin had been aware since January 2010. (Docket Entry 371.)

- On November 29, 2010, BOM submitted a response to Defendant Taskin's Declaration. (Docket Entry 380.)

- On January 14, 2011, this Court entered an Order denying Defendant Taskin's motion. Defendant Taskin never appealed the order. (Docket Entry 381.)

- On September 2, 2011, eight months after this Court's January Order, Defendant Taskin submitted another Motion For Relief From Final Default Judgment and Incorporated Memorandum of Law. (Docket Entry 432.)

II.   **Applicable Law**

Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)(4)") provides relief from a judgment or order in very limited, extraordinary circumstances. *See* Fed. R. Civ. P.

60(b); s*ee, e.g., Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000) (considering Rule 60(b)(6)); *United States v. Brown*, No. 00-08780, 2010 WL 55469, at *5 (S.D. Fla. Jan. 7, 2010) (rejecting defendant's self-serving statements and finding that extraordinary circumstances did not exist to set aside final judgment because record evidence established that defendant was served with process and had fair notice of the civil proceedings pending against her); *see also United States v. Tracts 10 & 11 of Lakeview Heights, Tx.*, 51 F.3d 117, 120 (8th Cir. 1995) (holding that a district court should grant a Rule 60(b) motion only upon an adequate showing of exceptional circumstances).

Pursuant to Rule 60(b)(4), a court may relieve a party from a final judgment or order based on a finding that the judgment is void. Fed.R.Civ.P. 60(b)(4). And, a judgment is void under Rule 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (citing *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). Courts have emphasized that "[i]n the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted." *R.C. v. Nachman*, 969 F. Supp. 682, 691 (M.D. Ala. 1997) (citing *V.T.A. v. Airco, Inc.*, 597 F.2d 220, 225 (10th Cir. 1979); *see, e.g., United Student Aid Funds, Inc.*, 130 S.Ct. 1367, 1377 (2010) (Federal courts considering Rule 60(b)(4) motions based on alleged jurisdictional defects generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction).

I.  **Defendant Taskin's Motion is Improper Because the Defendant Previously Filed a 60(b)(4) Motion, Which Was Dismissed By This Court.**

In determining whether to grant a Rule 60(b)(4) motion, courts will consider whether the motion is proper. Courts reject Rule 60(b)(4) motions as improper where the defendant previously filed a motion and later submitted another motion that reiterates the same facts and grounds as the first motion. *See e.g., Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir. 1983) (holding that the defendant's delay in waiting an additional six months to file the second 60(b) motion, which basically reiterated the arguments from his first motion "can hardly be characterized as 'reasonable.'"); *see also Gordon v. Monoson*, 239 Fed. Appx. 710, 714 (3d Cir. 2007) ("[defendant] points us to no authority, however, and we have found none, that requires a District Court to entertain a Rule 60(b)(4) motion where the moving party has previously filed a Rule 60(b)(4) motion on the same grounds and lost."); *see also Latham v.*

*Wells Fargo Bank*, 987 F.2d 1199, 1203-04 (5th Cir. 1993) ("by filing a Rule 60(b) motion following the denial of an earlier virtually identical post-trial motion, Latham is using the second motion . . . as an attempt to resurrect the then expired period in which to appeal the denial of the first motion. This procedural ploy cannot be allowed to succeed.").

For example in *Latham v. Wells Fargo Bank*, 987 F.2d 1199, 1203 (5th Cir. 1993), Ms. Latham sought relief from a judgment against her through a Rule 60(b) motion in 1990 (the "1990 Motion"). The 1990 Motion was denied by the *Latham* court in December 20, 1991. *Latham v. Wells Fargo Bank*, 987 F.2d at 1203. Ms. Latham did not appeal the order. *Id.* Instead, on February 21,1992, just days after the time for appeal had passed, Ms. Latham filed another Rule 60(b) motion (the "1992 Motion") and asserted the same grounds as the 1990 Motion. *Id.* The court rejected the 1992 Motion. *Id.* In making its decision, the court emphasized that Ms. Latham merely reiterated the same arguments as the 1990 Motion. *Id.* The court held that because the appellant did not file a timely appeal, the 1992 Motion was an improper "substitute for a timely appeal" of the 1991 order and that "[t]his procedural ploy cannot be allowed to succeed." *Id.* at 1203-04. Ms. Latham had alleged that she never received notice of the 1991 order or any of the opposing party's objections to the 1990 Motion. *Id.* The court rejected this argument and recognized that "the filing of another such motion [60(b) motion] alleging substantially similar grounds for relief does not provide plaintiff with a second opportunity for appellate review." *Id.* at 1204 (citing *Burnside v. E. Airlines*, 519 F.2d 1127, 1128 (5th Cir. 1975).

Similarly, in *Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir. 1983), the appellant filed a Rule 60(b) motion, which was subsequently denied. *Planet Corp*, 702 F.2d at 126. Six months later, appellant filed another Rule 60(b) motion. *Id.* The court denied the second motion and emphasized that "[a]ppellant here was dilatory in waiting six months to file his first (denied) Rule 60(b) motion. His delay in waiting an additional six months to file the second motion can hardly be characterized as 'reasonable.'" *Id.*

Here, Defendant Taskin seeks to use another Rule 60(b) motion as a substitute for a timely appeal. The Defendant filed a Rule 60(b)(4) motion on November 9, 2010. (Docket No. 371.) This motion was denied by order of this Court on January 14, 2011, (Docket No. 381) and similar to the appellant in *Latham v. Wells Fargo Bank*, Defendant Taskin did not appeal the judgment. Instead, nearly eight months after the order, Defendant Taskin filed another Rule

60(b)(4) motion.

In this second Rule 60(b)(4) motion, Defendant Taskin relies on the exact same affidavit that he submitted on November 9, 2011.  Moreover, Defendant Taskin challenges the judgment against him on the same grounds (*i.e.*, personal jurisdiction and service) as the first motion that he filed.  Through his actions, Defendant Taskin is improperly trying to substitute his second motion for a timely appeal – a "procedural ploy," which courts deem improper.[2]  Because this Court already determined that Defendant Taskin's first motion lacked merit, Defendant Taskin's second motion, which re-hashes the exact same facts and grounds must also fail.

Defendant Taskin attempts to mislead the Court into believing that his prior motion, entered on November 9, 2010, was not challenging the "final judgment" in this case.  Defendant Taskin desperately argues that at the time he allegedly **signed** his motion, the Court had not adopted the Magistrate's report and recommendation as to damages.  As the Court already determined in its January 14, 2011 order, however, Defendant Taskin's motion was a Rule 60(b) motion for relief from the April 19, 2010 "final judgment".  Specifically, the Court found that Defendant Taskin's was seeking to disturb the **final judgment that was entered on April 19, 2010** on the grounds of personal jurisdiction, service, etc.  (Court's Order, Docket No. 381, at p. 2.)  Rule 60(b) applies to parties seeking relief from final judgment or orders.  *See* Fed. R. Civ. P. 60(b); *see also Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (noting that "[p]ursuant to Rule 60(b)(4), a court may relieve a party from a final judgment or order . . .").  Thus, because the judgment on April 19, 2010 granted BOM's motion for "final judgment" (Docket No. 236), contrary to what Defendant Taskin asserts, Defendant Taskin's affidavit was properly construed by the court as a Rule 60(b) motion.

The BOM respectfully submits that the Court should deny the Defendant's second motion as being unreasonable for asserting the exact same grounds and facts as his earlier motion.  This will prevent Defendant Taskin from using this second motion as a procedural ploy to substitute for a timely appeal.  As set out below, however, there is substantial basis to deny the Defendant's new motion.

## II.     An Evidentiary Hearing Was Not, And Is Not, Required

---

[2]     One court has explicitly emphasized that "[a]lthough a Rule 60(b)(4) motion may be filed at any time, a District Court need not consider anew the same arguments raised in successive motions merely because those motions seek relief under Rule 60(b)(4)." *Planet Corp. v. Sullivan*, 702 F.2d at 126.

In the instant Motion, the Defendant asserts that when the parties have submitted competing facts, a court **must** conduct an evidentiary hearing for the limited purpose of determining personal jurisdiction. This assertion, however, is incorrect false. The Eleventh Circuit has held that a party's affidavit can be disregarded when it constitutes a "sham" or raises issue that are "flatly contradicted" by earlier depositions. *See Tippins v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (citing *Van T. Junkins and Assocs. V. U.S. Indus.*, 736 F.2d 656 (11th Cir. 1984) and *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)). "Sham affidavits" are perceived as inadequate to raise a genuine issue of fact. *Id.* An affidavit may be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 954 (internal citations omitted).

Here, Defendant Taskin makes conclusory factual assertions in his affidavit, filed November 8, 2010 (the "Taskin Affidavit") that are flatly contradicted by contemporaneous documents and emails, including especially his own emails. The contemporaneous record in this case puts the lie to the statements Taskin makes in his sham affidavit:

- Contrary to his conclusory denial in his affidavit, Defendant Taskin had a bank account in Florida.

    o This is evidenced by documents from Jacaranda branch of Wachovia showing an account with Defendant Taskin's name and address (Exhibit A)

    o See also email from Taskin himself where he talks about "2.3 [million] transferred Suzie's and my joint account at Wachovia" and others (Exhibits B-C.)[3]

- Contrary to his conclusory denial in his affidavit, contemporaneous emails and documents show that Defendant Taskin was (and was held out) as an officer of the Florida entities in question:[4]

    o *See* Exhibit D (Defendant Taskin states that he has signed a document "for M&P corporate" that is to be sent to BOM);

---

[3] The BOM's Response to Defendant Taskin's First Motion, at p. 9, included specific testimony from one of the other enterprise members regarding Defendant Taskin's Florida bank account.

[4] The BOM's Response to Defendant Taskin's First Motion, at p. 9, included contemporaneous documents and emails showing that Taskin was acting as an officer of the Florida entities.

- o   Exhibit E (email from Burton Greenberg to a third party stating that "our Senior Officer Mr. Senol Tasiin [sic], handles all paperwork . . . .");

- o   exhibit F (email from Burton Greenberg to third party stating that "I will have my Senior Officer, Senol Taskin, send you our Non Circ.");

- o   exhibit G (referring to Defendant Taskin as being part of IXE USA);

- o   exhibit H (Articles of Incorporation of GTI filed with the Florida Department of State showing Defendant Taskin as a director of Defendant GT International;

- o   exhibit I (fraudulent indemnity sent to the BOM in order to cause the financial instruments to be issued signed by Defendant Taskin as "Officer").[5]

- Contrary to his conclusory denial in his affidavit, contemporaneous emails and documents show that Defendant Taskin often directed the actions of the Florida entities.[6]

  - o   Exhibit J (email from Defendant Taskin in which he states to "keep the funds at Corporate Account in Wachovia, and then send to Corporate Account at Europe");

  - o   Exhibit K (email from Defendant Taskin in which he directs that 40% of the "profits" should be sent to him and 60% to Burton Greenberg);

  - o   Exhibit C (email from Defendant Taskin in which he directs Burton Greenberg to create fictitious loan agreements between Defendant Taskin and M&P in order to avoid problems with the Canadian tax authorities);

  - o   Exhibit L (email from Defendant Taskin in which he demands that the money from the BOM-related commodity transaction be "divided amongst us");

  - o   Exhibit M (email in which Defendant Taskin is to send on behalf of M&P paperwork via email to a purported client in Charlotte.)

  - o   Exhibit N (email from Defendant Taskin in which he transmits an "M&P Global Financial Services" corporate resolution to a third party).

---

[5] There are many other contemporaneous emails in which Defendant Taskin is held out to be an officer of M&P.

[6] The BOM's Response to Defendant Taskin's First Motion, at p. 9, included contemporaneous emails relating to Taskin's conducting business for the Florida entities. The BOM noted in its Response that it had additional emails showing the Defendant's activities in Florida. *See id*. The BOM submits some of these contemporaneous emails now in light of the empty assertions that Defendant Taskin was not conducting business activities in Florida.

- Contrary to his conclusory denial in his affidavit, Defendant Taskin traveled to Florida on numerous occasions. This is evidenced by Suzanne Greenberg's previous testimony in which she says that Defendant Taskin has been to Florida for office visits "perhaps" more than 10 times, with his "coming into the office" for some of those visits. (*See* Exhibit E to BOM's First Response to Defendant Taskin's Motion For Relief From A Judgment.)

- Contrary to his conclusory denial in his affidavit, he sent hundreds of emails to his co-enterprise members in Florida to coordinate the enterprise's activities, including activities in Florida (see contemporaneous emails collected as Exhibit O).

- Contrary to his conclusory denial in his affidavit, Defendant Taskin directed that hundreds of thousands of dollars be paid to him out of the Florida accounts.

    o Exhibit K (email from Defendant Taskin in which he directs that 40% of the "profits" should be sent to him and 60% to Burton Greenberg).

    o Exhibit P (Wachovia bank statements showing distributions to Defendant Taskin personally from the Florida "corporate account" of M&P for **US$1,149,977.20**).

Just because Taskin makes cryptic, conclusory assertions in his November 2010 affidavit does not require this Court to hold an evidentiary hearing now – and did not require the Court to hold an evidentiary hearing when denying Defendant Taskin's earlier 60(b) motion. *See*, *e.g.*, *United States v. Brown*, No. 00-08780, 2010 WL 55469, at *5 (S.D. Fla. Jan. 7, 2010) (rejecting defendant's self-serving statements without an evidentiary hearing).

### III.   Defendant Taskin Has Not Shown Exceptional Circumstances To Void The Judgment.

The BOM requests that the Court review its response dated November 29, 2010 (the "Response") to the Defendant's First Rule 60(b) Motion, as the Response lays out the standards and why jurisdiction was proper in this case. As the BOM stated therein, relief from a judgment generally is available only if the court that rendered the judgment lacked even an "arguable basis" for jurisdiction. *See, e.g., United Student Aid Funds, Inc.*, 130 S.Ct. 1367, 1377 (2010) ("Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction").

Defendant Taskin's conclusory and self-serving statements regarding jurisdiction

and service do not support a finding that the Court lacked an arguable basis for jurisdiction. As set out below, and as set out in the BOM's earlier Response, the default judgment is not void, and the Motion should be denied.[7]

### a. Defendant Taskin Has Sufficient Minimum Contacts with Florida and with the United States.

To constitute minimum contacts for the purposes of specific jurisdiction, the defendant's contacts with the applicable forum must satisfy three criteria: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it, (2) the contacts must involve some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum, and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court. *See SEC v. Carrillo*, 115 F.3d at 1542. Contacts are related to, or give rise to, a cause of action when each of the contacts is a step by which a fraudulent scheme is carried out. *See id.* at 1544.

Any of the acts set out in Section II, *Supra*, would be sufficient to constitute minimum contacts with the forum. For example, in *SEC v. Carrillo*, 115 F.3d at 1546, the Eleventh Circuit held that "applicable case law unequivocally establishes that maintaining bank accounts in the forum for purposes of carrying out the subject transactions constitutes purposeful availment and invocation of the benefits of the forum's laws." Defendant Taskin had a bank account under his own name in Florida and directed the transfer of substantial funds in and out of other bank accounts in Florida. (*See*, *e.g.*, Exhibits A, B, K and Q.) Taskin's own email stated that he transferred US$2.3 million into and out of his Wachovia account. (Exhibit B.) He ordered that funds be transferred out of the purported "corporate accounts" of M&P, and transferred money into those accounts. (*See*, *e.g.*, Exhibit K and Q.) These transactions were in connection with his work for the enterprise, which be definition is related to the cause of action here.[8] This is just one example of his many contacts giving rise to personal jurisdiction.

Section II, *Supra*, lays out all the actions of the Defendant by which he has made himself subject to personal jurisdiction of this Court. The BOM will not repeat all of these

---

[7] Defendant Taskin makes the remarkable statement in his Second 60(b) Motion that there are no allegations in the Amended Complaint that Taskin conducted business in Florida. (*See* Motion, at p. 6.) The Amended Complaint is replete with allegations that Taskin conducted business in Florida. *See*, *e.g.*, Amended Complaint, filed December 11, 2009, at ¶¶ 24-27, among other places.

[8] This Court has already found that there was a RICO enterprise that involved the Defendants. *See* Order for Partial Summary Judgment, Docket No. 336, at p. 9.

actions in this Section. Rather, the BOM addresses some of the incorrect assertions made in the Defendant's Second Motion regarding personal jurisdiction.

First, Florida's Long Arm Statute is not applicable to this case. The claim giving rise to jurisdiction in this Court is the RICO claim. (*See* Amended Complaint, Docket No. 140, at ¶¶ 1-3.) The Eleventh Circuit has made clear that federal statutes providing for nationwide service, such as RICO, are not subject to a State long arm jurisdiction analysis.[9] In *United States SEC v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. Fla. 1997), the Eleventh Circuit stated that we "hereby hold that the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process." The court held that a state's long arm statue was not applicable when determining personal jurisdiction. Id., at 1543-44. Thus, as this arises out of RICO – a federal claim that provides for nationwide service – the Florida Long Arm Statute is not applicable.[10]

Second, the Defendant misstates the requirement in order to find contacts under a RICO claim. As shown by numerous contemporaneous emails and documents, the Defendant conducted business with the Florida defendants and directed the Florida entities. Defendant incorrectly asserts in his Second Motion that these acts are of no moment because they were not for the BOM transaction. This is patently false, as can be seen by the emails, but in any event does not matter. The claim here relates to a RICO enterprise based on continuing criminal activity and numerous acts. The BOM transaction was just one of the transactions conducted by the Defendants as part of the enterprise. Thus, any business conducted by the enterprise in any way related to Florida (and the U.S.) is relevant for purposes of jurisdiction. As set forth in the

---

[9] Sections 1965(b)(d) of the RICO Act provide for nationwide service. *See generally Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671-72 (7th Cir.1987).

[10] For the sake of completeness, the BOM notes that this Court has jurisdiction under the Long Arm Statute. Defendant only cites to Section (a) of the long arm statute regarding business activities in Florida. This is met by the contacts listed above, including but not limited to the Defendant's directing the business activities of the Florida entities and the Florida bank accounts. Moreover, Sections (b) and (f) of the long arm statute also would apply (if the statute applied, which it does not). By holding himself out as a corporate officer, Defendant Taskin also committed a tortuous act in Florida, under section (b) of Florida's long-arm statute. The court in *Doe v. Thompson* points out that, under the long-arm statute, "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." *Id.* at n.1.; *see also Duke v. Young*, 496 So. 2d 37, 40 (Ala. 1986). More importantly, the Eleventh Circuit has recognized that jurisdiction under section (b) of the long-arm statute "is not limited to a situation where an act in Florida caused an injury in Florida but also….reached the situation where a foreign tortious act caused injury in Florida. *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F. Supp. 473, 478 (M.D. Fla. 1996). Here, Defendant Taskin fraudulently held himself out as a corporate officer of a Florida corporation. Thus, his actions clearly satisfy as a tortious act in Florida.

Complaint, and as shown by numerous contemporaneous documents, Taskin was sending countless emails to the Florida defendants re the Florida accounts and businesses and was directing the Florida entities.

Third, the Defendant's Second Motion asserts that he did not personally benefit from his work for the enterprise. This is undeniably false. It was Defendant Taskin who stated that 40% of the illicit gains from the enterprise were to be sent to him, not a corporate entity. (Exhibit K.) In fact, the Wachovia bank records show that hundreds of thousands of dollars went from the alleged "corporate account" in Wachovia to Defendant Taskin's personal account, as shown by the beneficiary designation on those transfers. (Exhibit P.)

Fourth, Defendant asserts that this RICO action should have been brought somewhere else other than Florida. Four of the individual defendants reside in Florida, as do the corporations of which Taskin is an officer. The RICO acts occurred in large part in Florida, which was the nerve center of the enterprise. Congress provided a civil law remedy for RICO claims in order to deter this very same type of activity being committed in large part in Florida. It strains credulity that Florida and the United States do not have an interest in this action sufficient to give rise to personal jurisdiction.

### b. *Service On Defendant Taskin Was Proper And, In Any Event, He Had Notice Of The Proceeding In January 2010*

As set out in our First Response, Taskin has to show extraordinary circumstances as to why the judgment should be void. Simply asserting – months after the final judgment – that service was improper when he had actual notice is not an extraordinary circumstance.

It is clear that Defendant Taskin had notice of the action pending against him, and he does not allege to the contrary in his Declaration. His Declaration includes exhibits showing that he executed an affidavit on January 25, 2010, less than 3 weeks after receiving the Complaint and Summons. (Declaration, Docket Entry No. 371, Exs. A-C.) After consulting with his lawyer, he decided to do nothing until after the final judgment was rendered.

The principle purpose of the service of process rule is to give the defendant notice that an action has been initiated against him. *See Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F.Supp.2d 1273 (S.D. Fla. 1999). Similarly, the purpose of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") is to ensure that individuals receive notice of judicial and extrajudicial documents. *See* Hague Convention,

Preamble; *see also* Fed. R. Civ. P. 4(f)(1); *see also Banco Latino*, 53 F.Supp.2d at 1279-80.  It is well-established that the service requirements of the Federal Rules should be liberally construed when a defendant has actual notice of an action.  *See, e.g., Banco Latino,* 53 F.Supp.2d at 1281 ("It is well-established that once a defendant, as is the case here, has actual notice of the pendency of an action, the requirements of Fed. R. Civ. P. 4 are to be liberally construed."). Moreover, "[n]otice of a complaint coupled with good faith attempted service is sufficient to confer jurisdiction where a party is evading service of process."  *Id.* at 1280-81.  Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also United Student Aid Funds*, 130 S.Ct. at 1378 (finding that due process rights were satisfied when defendant received actual notice of filing and therefore plaintiff's failure to serve a summons and complaint did not entitle the defendant to relief under Rule 60(b)(4)).  Defendant Taskin had actual notice of the proceeding against him.  His Rule 60(b)(4) motion should again be denied.

    The BOM requests that the Court review the BOM's Response dated November 29, 2010 regarding the issue of service.  This response lays out why service was proper in this case.

    Citing a case from the Middle District of Florida, *In re Mak Petroleum*, *Inc.*, 424 B.R. 912 (Bankr. M.D. Fla. 2010), Defendant Taskin's new motion falsely asserts that the BOM "fails to acknowledge the most recent pronouncement on the issue from a federal court in Florida." (Motion, at p. 11.)  First, just to correct the record, the BOM cited this case with a parenthetical in its First Response to Taskin's earlier Rule 60 motion.  (*See* First Response, dated November 29, 2010, at fn. 6.)   So the Defendant's assertion that the BOM failed to acknowledge this case is false.

    Second, in the November Response, the BOM laid out several reasons why many courts have held that service can be effectuated in Canada via postal channels.  This included a position by the State Department regarding the propriety of such service, a court decision by Canada, as well as other district courts located in the Eleventh Circuit.  (*See* First Response, dated November 29, 2010, at fn. 6.)

    Lastly, it should be noted that the Canadian party in *In re Mak Petroleum* moved to quash the subpoena for insufficiency of service.  Here, Taskin received the complaint and

summons yet did nothing until after the Court had issued a final judgment.  In any event, the Defendant cannot demonstrate exceptional circumstances to show why the judgment should be void.

## **CONCLUSION**

For these reasons, BOM respectfully requests this Court to deny the Motion For Relief From Final Default Judgment.

Dated: September 19, 2011          MILBANK, TWEED, HADLEY,

& MCCLOY LLP
Counsel for Plaintiff
1850 K Street, N.W.,
Suite 1100
Washington, D.C. 20006
Ph:  (202) 835-7547
Fax: (202) 263-7547
Michael D. Nolan
MNolan@milbank.com
Edward G. Baldwin
EBaldwin@milbank.com


ATKINSON, DINER, STONE
MANKUTA & PLOUCHA, P.A.
Co-Counsel for Plaintiff
100 S.E. 3rd Avenue, Suite 1400
Ft. Lauderdale, FL  33394
Ph:  (954) 925-5501
Fax: (954) 920-2711

_____/s/_____
DAVID B. MANKUTA
FLORIDA BAR NO.  216 801
DBM@atkinson-diner.com
JOSE M. SANCHEZ
FLORIDA BAR NO. 356890
JMS@atkinson-diner.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, pursuant to Rule 5 of the Federal Rules of Civil Procedure, on the 19th Day of September, 2011, a true and correct copy of the foregoing *Plaintiff's Response to Defendant Senol Taskin's Motion for Relief from a Judgment*, and all supporting documentation, was served on all counsel of record pursuant to Court's ECF system.

ATKINSON, DINER, STONE
MANKUTA & PLOUCHA, P.A.
Co-Counsel for Plaintiff
100 S.E. 3rd Avenue, Suite 1400
Ft. Lauderdale, FL  33394
Ph:  (954) 925-5501
Fax: (954) 920-2711

_____/s/_____
DAVID B. MANKUTA
FLORIDA BAR NO.  216 801
DBM@atkinson-diner.com
JOSE M. SANCHEZ
FLORIDA BAR NO. 356890
JMS@atkinson-diner.com